LA MANNA *v.* NATIONAL SECURITY LIFE & ACCIDENT CO.

*(Supreme Court, General Term, Second Department.  May 12, 1890.)*

INSURANCE—MUTUAL BENEFIT—INTERPRETATION OF POLICY.

An assessment life insurance association issued a certificate to the insured, covenanting to pay his estate $5,000 upon his death, "as provided in the constitution." That instrument provided that "the company shall not be liable, in case of the death of a member, for more than one-fifth the net amount of the bi-monthly premiums next following said death on all the members of the department to which such deceased member belongs, for each $1,000 of death benefit named in his policy. This, however, does not prohibit the board of directors from paying a loss in full, but the amount paid shall in no case exceed the amount stated in policy." *Held*, that the amount stated in the policy was *prima facie* the amount due thereon, and that, in the absence of evidence showing the department to which deceased belonged, and the amount of the bi-monthly premiums next after his death, a verdict for the full amount of the policy was properly ordered.

Appeal from circuit court, Kings county.

Action by Maggie La Manna, as administratrix of John B. La Manna, against the National Security Life & Accident Company, a co-operative or assessment association formed under Laws N. Y. 1883, c. 175. A verdict was directed for plaintiff, and from the judgment entered thereon defendant appeals.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*D. W. Northup*, for appellant.  *W. Allan*, for respondent.

BARNARD, P. J.  The defendant issued a certificate or policy of insurance constituting John B. La Manna a member of the defendant company, and covenanted to pay his estate $5,000 upon his death, "as provided in the constitution." Whether designed or not, the contract is made blind and uncertain by the words limiting the risk to an instrument made by the defendant, and one which would not usually be received by an assured person. The constitution referred to contains this section: "Sec. 2. The company shall not be liable in case of the death of a member for more than one-fifth the net amount of the bi-monthly premiums next following said death on all the members of the department to which said deceased member belongs, for each $1,000 of death benefit named in his policy. This, however, does not prohibit the board of directors from paying a loss in full, but the amount paid shall in no case exceed the amount stated in policy." The contract is not plain with this addition. The death fund is stated in the constitution to be 80 per cent. of the net amount of bi-monthly premiums. The department to which the deceased member belongs is not given, and, so far as the case shows, has never been fixed. This action is based upon the policy. It avers the contract of insurance; the death of the assured; that he kept all the conditions of the policy; and that the company had failed to pay, on due proof of death, at the time provided for payment in the contract. The defendant admits its corporative existence, admits the death of the assured, and non-payment, and denies all other allegations. Upon these pleadings the parties entered upon the trial.

The first objection taken is to the complaint,—that the plaintiff should have averred what was due, as provided in the constitution. The objection was overruled on the ground that the contract was for the amount stated in it, unless the same was reduced by the company. This was the correct view of the contract. The agreement to pay was absolute. The reference to the constitution did not reduce the claim unless one-fifth of the bi-monthly assessment or premium next after the death was insufficient to pay the whole amount, or unless the directors did not elect to pay in full from what they had, or from bi-monthly dues. The application and the constitution use all these several terms. The rule of construction is to be favorable to the assured. *Dilleber* v. *Insurance Co.*, 69 N. Y. 256. The constitution fails to show

any contract which calls for the payment of a sum less than the amount of the policy. Reading it all together, there is a general death fund, which can only be used to pay death claims, and a reserve fund, which can only be used to make good a deficiency in the death fund. The policy cannot be read by an applicant for insurance, and the result be reached that little or nothing may be payable under it, and that the assured undertakes to make averments and proof, which he has full power by the constitution to do. No proof was given or offered to show to which department the deceased was a member, nor the amount of the bi-monthly premium next after his death. If the word "department" is designed to express a class of policies, to which does this one belong, and how many life-members are there in it, and does section 3 of title 8 of the constitution make the reserve fund liable to pay the loss?

The constitution does not show that the defendant is entitled to any reduction, nor does it give facts from which such a result can be determined. The directors have power to increase the bi-monthly payments. As appears from the policy in question, the bi-monthly premium has been increased threefold. If a bi-monthly premium is something different from a bi-monthly expense premium, what would show this, in an action to recover upon it?

There was proof given tending to show a waiver of the preliminary loss papers, and the death of the assured is admitted by the owner. This company sent no blanks, and in fact it was proven to have adopted loss papers served, although informal, and the refusal to pay was not put on the ground of defective loss papers. There was no question of fact to go to the jury, and the verdict for the full amount was properly ordered. Judgment affirmed, with costs. All concur.