Argued March 10, reversed March 31, rehearing denied April 21, 1914.

## CUNNINGHAM *v.* FRIENDLY.*

(139 Pac. 928; 140 Pac. 989.)

**Vendor and Purchaser—Abstracts of Title—Requisites and Sufficiency.**

1. A good abstract of title should show a synopsis of the data as to the title which, when verified, will establish it, and it must contain a reference to all conveyances, transfers or other facts relied upon as evidence of title, but need not contain the evidence.

[As to how far back purchaser is bound to search record title of his vendor, see note in Ann. Cas. 1914A, 1288.]

**Evidence—Expert Testimony—Effect.**

2. Expert testimony as to the defects in an abstract of title can be considered by the court in the nature of argument only, and the court must be the judge whether the abstract, when verified, shows a good title.

[As to whether expert witness may give opinion as to ultimate fact, see note in Ann. Cas. 1914B, 191.]

**Partition — Actions for Partition—Parties—Nonresident Wives of Owners.**

3. Under Section 7306, L. O. L., providing that a woman being an alien shall not be barred of her dower, and that any woman residing

*As to the broker's right to commission where sale fails because of defects in employer's title, see notes in 3 L. R. A. (N. S.) 576 and 24 L. R. A. (N. S.) 1182.

The authorities on the duty of a vendor as to abstract of title are reviewed in a note in 43 L. R. A. (N. S.) 44.

On the question of the performance of a contract by a real estate broker to find a purchaser or effect an exchange of his principal's property, see note in 44 L. R. A. 593.        REPORTER.

out of the state shall be entitled to dower of the lands of her deceased husband in the state of which he died seised, nonresident wives of owners of land involved in a partition suit are not necessary parties to the suit.

[As to the effect of dower upon partition, see note in 82 Am. St. Rep. 863. As to parties in proceedings to partition property of decedents, see note in 41 Am. St. Rep. 142.]

### Vendor and Purchaser—Title of Vendor—Names of Parties to Conveyances.

4. A discrepancy between full names and initials in conveyances as shown by the abstract of title to land sold, where the initials are those of the parties apparently intended, and of the parties in the chain of title, having stood for more than 10 years without question, is immaterial.

[As to presumption that letter constitutes name, see note in Ann. Cas. 1914A, 1115.]

### Vendor and Purchaser—Abstract of Title—Requisites and Sufficiency.

5. An abstract of title which states that a decree of partition confirms the report of the referees which sets off lots described to certain persons named is sufficient, as against the objection that it does not show the report of the referees or decree in partition.

### Vendor and Purchaser—Title of Vendor—Sufficiency.

6. That certain lots were conveyed before the platting and dedication of a donation land claim does not show that they are not included therein, where the abstract shows that much of the land included in the donation land claim was disposed of as if title had been received from the government before it was in fact received, and attempts were made after title was received to confirm the titles previously granted.

### Brokers—Compensation—Performance of Contract.

7. Where a real estate agent procures a purchaser for land who afterward declines to accept it because of alleged defects in the owner's abstract of title, but the abstract in law shows good title, and the agent has entered into no written contract with the purchaser as authorized by his contract of employment by the owner, so that the owner was unable to enforce specific performance, the agent is not entitled to commission.

### ON PETITION FOR REHEARING.

### Trial—Reception of Evidence—Effect of Admission.

8. An exhibit admitted in evidence may be considered for what it contains, regardless of who introduced it.

### Brokers—Actions for Compensation—Issues.

9. In an action by a broker for commission on a sale of real estate, which failed because of alleged insufficiency of the abstract furnished by defendant, any defects in the title offered must be made specific issues and tried by the court, and plaintiff must allege in what respects the abstract is defective.

### Brokers—Right to Compensation—Performance of Contract.

10. Where a broker is employed "to make sale of the real property * * and to execute a binding contract of sale," the fact that he

brought the owner and a purchaser together, and that the latter made a payment, does not entitle the broker to his commission when the sale is not consummated because of refusal of the purchaser to accept a title which is good in law.

[As to when a broker becomes entitled to commissions, see note in 28 Am. St. Rep. 546.]

**Frauds, Statute of—Operation and Effect—Part Payment.**

11. Though a part payment binds a contract of sale of personalty, it does not bind a purchaser of real estate; either a contract in writing or such part performance as takes it out of the statute being essential.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 2.    Statement by MR. JUSTICE EAKIN.

This is an action by A. A. Cunningham against J. C. Friendly, to recover commissions on sale of real estate. The amended complaint sets out the contract with the defendant as follows:

"Contract.
"Portland, Oregon, April 29, 1910.
"To Cunningham & Gray:

"For and in consideration of one dollar ($1.00), the receipt of which is hereby acknowledged, we hereby appoint you exclusive agent to make sale of the real property herein described as lots 7 and 8 of block 153, of the City of Portland, at 5th and Montgomery Streets, for the price of $25,000, upon the following terms: $12,500 cash, $12,500 secured by mortgage thereon for two years at 6 per cent. And you are hereby authorized to accept a deposit to be applied on the purchase price, and to execute a binding contract for sale on our behalf. In case the above-described property is sold or disposed of within the time specified, we agree to make the purchaser a good and sufficient warranty deed to same, and to furnish a complete abstract of title, if required; and it is further agreed that you shall have and may retain from the proceeds arising from such sale $675.00 commission on the above price.

"This contract to continue until May 1st, 1910.
"[Signed]    J. C. FRIENDLY.    [Seal]
"Witness: W. S. MILLER."

Thereafter, on the 30th day of April, 1910, Cunningham & Gray produced A. E. Rocky, who, it is alleged, was willing and able to buy the property on the terms offered, and introduced him to the defendant, to whom he then and there paid $1,000 by check upon the purchase price, agreeing to pay the balance of the first payment in cash, and to give a mortgage for the second payment, when good warranty deed with abstract of title should be furnished. It is contended by plaintiff that the sale was not completed, because defendant did not furnish an abstract of title as required; defendant contending that he did furnish a complete abstract of title, and executed and tendered a deed as agreed with Rocky. Among other testimony introduced in evidence at the trial was the following letter by Friendly and Rosenthal to Rocky:

"Portland, Oregon, May 19, 1910.

"Dr. A. E. Rocky,

"Electric Building, City.

"Dear Sir: We herewith tender you warranty deed to lots seven (7) and eight (8) in block one hundred fifty-three (153), Portland, Multnomah County, Oregon, upon the payment by you of eleven thousand five hundred dollars ($11,500.00) additional cash and a mortgage for twelve thousand five hundred dollars ($12,500.00) on the above-described property, payable to us in one year at 6 per cent interest, said interest payable quarterly, with privilege of paying the whole or any part of same in multiples of one thousand ($1,000.00) at any time. The above is in accordance with our verbal agreement, and to-day was set by you as the time you should close the transaction.

"JACOB ROSENTHAL.

"JULIUS C. FRIENDLY."

At the close of plaintiff's testimony defendant moved for a judgment of nonsuit, for the reason that the evidence failed to prove a cause sufficient to be submitted to a jury, which motion was denied. The court

70 Or.—15

found the facts in favor of the plaintiff, and rendered judgment accordingly, from which the defendant appeals.    Reversed: Rehearing Denied.

. For appellant there was a brief with oral arguments by *Mr. Earl C. Bronaugh* and *Mr. Franklin F. Korell.*

For respondent there was a brief with oral arguments by *Mr. J. N. Davis* and *Mr. W. W. Dugan, Jr.*

Mr. Justice Eakin delivered the opinion of the court.

1. The questions raised on the appeal are included in the motion for judgment of nonsuit; the controversy being whether or not the abstract furnished by the defendant was a "complete abstract of title," as contracted. There is no effort to question defendant's title to the property, but only the sufficiency of the abstract tendered. A good abstract should show a synopsis of the data as to the title which, when verified, will establish it. It must contain a reference to all conveyances, transfers or other facts relied upon as evidence of the title, but need not contain the evidence. See *Jaeger* v. *Harr,* 62 Or. 21 (123 Pac. 61, 901), as to a good abstract.

2, 3. There was objection made to testimony of experts as to what were the defects in the abstract offered, and their opinions as to whether the abstract was sufficient. Although the testimony was received, it can be considered by the court in the nature of argument only, and it must be the judge of whether the abstract, when verified, shows a good title. Therefore we have considered only the testimony and written opinions of experts as suggesting the points in the abstract to be considered. One of the objections to it is that, in the suit to partition the real property of the

estate of Isaac A. Davenport, deceased, it is not shown whether the parties to the suit named as owners of an interest had wives living, and, if so, that they are not made parties to the suit.   Section 7306, L. O. L., provides:

"A woman being an alien shall not on that account be barred of her dower; and any woman residing out of the state shall be entitled to dower of the lands of her deceased husband lying in this state of which her husband died seised."

And it is held that this statute has a negative operation, namely: That a woman residing out of the state shall be entitled to dower in lands only of which her husband died seised: *Thornburn* v. *Doscher* (C. C.), 32 Fed. 811.   As applied to the case before us, the wives of the parties to the partition suit not made parties were nonresidents of this state.   Hence the nonresident wives were not necessary parties to that suit, and the decree of partition operated as an alienation of the land by the tenants in common, except as to the tracts or parcels decreed to the husband of such woman.

4. As to the interests of the trustees to whom his interest in the lots in question were willed by John Davenport, deceased, Henry Davenport, one of said trustees, who did not act, was a party to the partition suit, as were also John McDonald and Edward Charles Davis, and their interests as trustees and as individuals were set out in the complaint.   Defendants all answered, expressly admitting that the complaint correctly set out the interests of all the parties to the suit.   That was 33 years ago.   The decree in the partition suit eliminated the interest of everyone in the lots in question except that of Mary Elizabeth McDonald, Elizabeth Matilda Davenport, James S. Davenport and Charles Henry Davenport, to

whom the title thereto was decreed, and was acquiesced in by Henry Davenport thereafter. Mary Elizabeth McDonald, Elizabeth Matilda Davenport and Charles H. Davenport were the only heirs of James S. Davenport, who died June 21, 1884. The abstract shows that John McDonald succeeded to their title in said lots on December 2, 1884. A discrepancy between full names and initials occurred in the conveyances as shown by the abstract, where the initials are those of the parties apparently intended and of the parties in the chain of title. Having stood without question 25 or 30 years, it is immaterial after this lapse of time, being more than 10 years. The order of distribution referred to, as well as the complaint and answer in the partition suit, showing who were the heirs of Isaac A. Davenport, has been acquiesced in for 33 years, and is sufficient. Neither did Matthew Davenport take any interest in the real estate of John Davenport, deceased, as the title was willed to trustees, and the partition suit divested the trustees of any title to the lots in question.

5. Objection is made that the abstract of the partition suit does not meet the needs of the abstracter, nor show the report of the referees or decree in partition. The abstract states that the decree confirms the report of the referees, which sets off to Mary Elizabeth McDonald, Elizabeth Matilda Davenport, James S. Davenport and Charles Henry Davenport lots 7 and 8, block 153, Portland. It is not the purpose of an abstract to furnish evidence of these facts, but to set forth a summary or synopsis of the facts relied on that, when verified, will furnish such evidence. That is disclosed by this abstract.

6. Some question was raised that lots 7 and 8, block 153, Portland, deeded by Coffin to Hart, were not a part of the tract known as the Coffin donation land

claim, as that deed is dated March 28, 1858, while the claim was not platted or dedicated until December 4, 1867, and is there called Coffin's Addition to Portland. There is probably no doubt but that the Coffin donation land claim was platted prior to March, 1858; but he, not having title to his claim at that date, replatted it in 1867, and in this case, as in all the other donation land claims on which Portland is situated, the title to the lands was dealt with as though the claimant had received a title from the general government. Later attempts were made to perfect the titles in the purchasers. See bond of Coffin, at page 15 of the Abstract, in which he subsequently undertakes to perfect the title. It will be noted that many of the titles to this land on which Portland is situated passed through the name of C. M. Carter during the pretitle period, as appears in this abstract, and that, after Coffin had conveyed these lots to Hart in 1858, after he had received patent from the United States government on March 2, 1861, and after he had platted the claim in 1867, he deeded by quitclaim deed his whole claim, 223 acres, to C. M. Carter on August 20, 1870. Hart conveyed these lots to Isaac A. Davenport on April 6, 1859, prior to the patent or plat, and on February 20, 1871, after the patent and plat Carter conveyed them to Isaac A. Davenport, evidently in fulfillment of the Coffin bond, *supra,* and the Coffin quitclaim deed to him.

7. Most of these objections are extremely technical, but would be given notice if the title were not aided by long adverse possession in the present claimants, which cures all of these omissions. Therefore we are of the opinion the abstract was sufficient, and that the Friendly deed and abstract tendered on May 29, 1910, were a sufficient compliance with his contract. If there had been a contract in writing made with Rocky as was authorized by the contract with the plaintiff,

so that defendant could have enforced specific perform-ance on establishing his compliance, plaintiff might have been entitled to his commission; but as between the defendant and Rocky the latter was not bound to purchase, and defendant had no remedy. Therefore the plaintiff did not make sale of the lands, nor did he furnish a purchaser, ready, able, and willing to pur-chase.

The judgment will be reversed and the nonsuit granted.          REVERSED: REHEARING DENIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE McNARY concur.

---

Denied April 21, 1914.

ON PETITION FOR REHEARING.

(140 Pac. 989.)

MR. JUSTICE EAKIN delivered the opinion of the court.

8. It is not a matter of importance who introduced Defendant's Exhibit 1. It was here for the considera-tion of what it contained, regardless of who offered it: *Jennings* v. *Trummer,* 52 Or. 149 (96 Pac. 874, 132 Am. St. Rep. 680, 23 L. R. A. (N. S.) 164, and cases there cited) ; *Patton* v. *Women of Woodcraft,* 65 Or. 33 (131 Pac. 521). It is objected that the law does not make the court the searcher of the record as to the abstract of title. That may be true, but the law does make the court the judge of whether the abstract is sufficient; and there is no question here as to the sufficiency of the title.

9. If there be defects in the title, they must be made specific issues and tried by the court; and if plaintiff objects to the abstract as suspicious or defective, he

must allege what is defective and in what respects. He cannot call an expert to decide the matter for the court, and custom or practice of attorneys or abstracters will not determine the title, nor the rule of evidence in relation thereto. A complete abstract of title does not mean the complete evidence of the title, but a synopsis of the data as to the title.

10. The plaintiff was not employed to find a purchaser for the lots and to bring the purchaser and seller together, but "to make sale of the real property * * for the price of $25,000 * * and to execute a binding contract of sale on our behalf. In case the above property is sold or disposed of * * you shall have * * $675 commission on the above price." This case does not come within the rule announced in *Henry* v. *Harker,* 61 Or. 276 (118 Pac. 205, 122 Pac. 298). No specific objections are made in the pleadings or in the evidence to the title to the property; and the whole controversy therein is as to the sufficiency of the abstract. Plaintiff relies upon the fact that he brought Rocky and Friendly together, but that does not bring plaintiff within his contract to sell; neither does Rocky by his letter (Plaintiff's Exhibit "E") agree to buy.

11. A deposit on the price does not bind the purchaser to buy. There must be a contract in writing or such part performance as takes the case out of the statute. A part payment binds a contract of sale of personal property, but not of real estate: See *Cooper* v. *Thomason,* 30 Or. 161 (45 Pac. 295).

The petition is denied.

REVERSED: REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE MCNARY concur.